# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**BRITANY, F.,**[1]

      **Plaintiff,**

**v.**                               **Civil Action No. 2:22cv160**

**KILOLO KIJAKAZI,**
***Acting Commissioner of***
***Social Security,***

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff Britany F. seeks judicial review of the Commissioner of Social Security's denial of her claim for disability benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act. Specifically, Plaintiff alleges that the Commissioner's Administrative Law Judge ("ALJ") improperly analyzed opinion evidence from one of Plaintiff's treating providers, and lacked sufficient medical evidence to support the limitations articulated in her residual functional capacity ("RFC"). She therefore contends the RFC finding is not supported by substantial evidence. This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. This Report finds no error in the ALJ's assessment of the evidence and therefore recommends that the court grant the Commissioner's motion for summary judgment and affirm the final decision of the Commissioner.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

## I.      **PROCEDURAL BACKGROUND**

On September 5, 2019, Plaintiff protectively filed for DIB and SSI.  (R. 117-18, 127-28).  Plaintiff alleged disability beginning August 24, 2019, based on sarcoidosis, asthma, migraines, sleep apnea, diabetes, arthritis, hypertension, and auditory and visual disorders.  Id.  The state agency denied her application initially and on reconsideration.  (R. 175, 185).  Plaintiff requested an administrative hearing, (R. 199), which was held July 7, 2021, and at which Plaintiff was represented by counsel, (R. 40-63).  An impartial vocational expert ("VE") also testified.  Id.  On August 11, 2021, ALJ Jeffrey Jordan denied Plaintiff's claims for DIB, finding she was not disabled during the period alleged.  (R. 20-34).  On February 18, 2022, the Appeals Council denied Plaintiff's request for review.  (R. 1-3).

On April 19, 2022, Plaintiff filed her complaint in this court.  Compl. (ECF No. 1).  Plaintiff seeks judicial review of the Commissioner's final decision that she was not entitled to an award of DIB or SSI, claiming that the Commissioner's conclusions are "not supported by substantial evidence and are contrary to law and regulation."   Id. ¶ 8 (ECF No. 1, at 2).  On July 25, 2022, Plaintiff moved for summary judgment.  (ECF No. 13).  Plaintiff argues that the case should be reversed or remanded because the ALJ improperly analyzed the medical opinion evidence, particularly an opinion offered by her treating physician, Dr. Aamer Syed, and failed to develop the record or ground his findings in the medical evidence.  Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem.") (ECF No. 14, at 1, 9-18).  On August 12, 2022, the Commissioner opposed Plaintiff's motion and moved for summary judgment.  (ECF No. 16).  The Commissioner argues that substantial evidence supports the RFC, and that the ALJ properly weighed the medical opinion at issue and other evidence in the record.  Mem. Supp. Def.'s Mot. Summ. J. & Opp'n Pl.'s Mot.

Summ. J. ("Def.'s Opp'n") (ECF No. 17, at 1-2). Plaintiff filed no reply and the time for replying has now expired. After a review of the record, this Report considers each of these arguments.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff's Treatment

Plaintiff's arguments in this court do not require a complete review of her medical history as she primarily disputes the ALJ's assessment of the opinion testimony from her treating physician, Dr. Syed. The records bearing on that assessment and other evidence relevant to her arguments are summarized below.

Plaintiff was initially assessed for sarcoidosis[2] in October 2018 during outpatient treatment by Janice Sherwood, M.D. (R. 423). Following a history of facial and neck swelling, Dr. Sherwood reviewed an MRI which was completed in September 2018. (R. 390, 431). The MRI report found submandibular glands and muscles about the neck were "unremarkable." The nasopharynx, larynx lymph nodes and osseous structures were all "unremarkable" or within normal limits. There was no evidence of a "parotid mass, but the left parotid gland appeared larger than the right." (R. 386). The report also suggested further testing to assess possible abnormality involving the upper glottis, and base of the tongue. (R. 386). A CT scan revealed swollen lymph nodes but was otherwise normal. (R. 390).

On March 14, 2019, Plaintiff returned to Dr. Sherwood, whose physical exam that day found no swelling of her lymph glands, normal range of motion in her neck, no enlargement of her

---

[2] Sarcoidosis is an immune system disorder characterized by collections of inflammatory cells (granulomas) in parts of the body—usually the lungs or lymph nodes. Sarcoidosis: Overview, Mayo Clinic, www.mayoclinic.org/diseases-conditions/sarcoidosis/symptoms-causes/syc-20350358 (last visited January 23, 2023).

cervical or facial lymph nodes, and no peripheral synovitis. (R. 440). Dr. Sherwood did note tenderness of the joints of Plaintiff's fingers. She assessed pain in her right hand and urged follow up with specialists at VCU. (R. 441).

In April 2019, Plaintiff consulted with Dr. Syed. She reported difficulty swallowing due to carotid swelling. (R. 653). She also complained of joint pain and fatigue, but denied any significant rashes. Id. She had normal pulmonary findings, was neurologically intact, and there was no evidence of joint swelling. (R. 654). Dr. Syed ordered a guided biopsy to confirm his suspicion of sarcoidosis. (R. 655). When Plaintiff returned to Dr. Syed in July of 2019, she stated she was doing "okay." (R. 621). However, she complained of burning in her legs but confirmed "she [was] able to work full-time at her job, which [was] fairly physical [and] involves working with little kids." Id. Her physical exam again revealed no joint swelling or pulmonary abnormalities. (R. 623). She was neurologically normal. Id.

When Plaintiff returned to Dr. Sherwood in July 2019, she had been diagnosed with sarcoidosis and related neuropathy which was being treated with Methotrexate. (R. 443). Her review of systems that day was positive for chest pain, diarrhea, and a rash. Id. She was directed to follow up in six months. (R. 445). In August 2019, Plaintiff presented to Kelly Gwathmey, M.D. for complaints of neuropathic pain in her hands and feet. (R. 611). Dr. Gwathmey's physical examination was "essentially normal." (R. 613-14). She found no swelling and normal muscle tone in her extremities, 5/5 muscle strength, a normal gait and station, and intact sensation except for increased sensitivity in her feet. Id. Dr. Gwathmey prescribed Gabapentin and ordered a rheumatology consult, suspecting small fiber neuropathy related to her sarcoidosis. (R. 614).

Plaintiff returned to Dr. Syed in October 2019. Her nerve pain was a little better on the medication, but she still complained of burning pain and swelling in her lymph nodes. (R. 600).

His exam that day revealed no swelling in her extremities or joints and normal neurological findings and pulmonary function. (R. 602). He assessed sarcoidosis with the primary symptom being neuropathy. (R. 603). Dr. Syed also advised that her diabetes was poorly controlled. Id. He increased her Methotrexate and Gabapentin, decreased her dose of Prednisone, and advised that if her symptoms did not improve, he would consider starting Remicade. Id.

Also in October, Plaintiff consulted with Dr. Huzaefah Syed regarding a possible diagnosis of Sjogren's Syndrome[3]. (R. 768). She again reported burning in her legs and pain in her right hand when "she writes a lot." Id. His exam revealed no swelling, normal cardiovascular and respiratory findings, intact neurological exam, and no joint swelling or tenderness. (R. 770). X-rays of her hand were normal. (R. 772-73). Dr. Syed noted that he would check Plaintiff's ANA levels, but if they were negative, he felt it unlikely that she had Sjogren's. (R. 771).

Plaintiff presented to Dr. Gwathmey[4] again in November 2019. After Dr. Syed had reduced her Prednisone, she reported an increase in neuropathic pain. (R. 763). Her exam that day revealed normal cardiovascular and pulmonary function, 5/5 muscle strength, and normal muscle bulk and tone, intact sensation, except for slightly reduced sensation in her legs compared to her arms. (R. 764-65). She had a normal steady gait with normal arm swing. (R. 765). Dr. Gwathmey believed Plaintiff would benefit from beginning Intravenous Immunoglobulin (IVIg) treatment and she began receiving infusions in December 2019 or January 2020. (R. 748, 766-67).

---

[3] Sjogren's Syndrome is an immune system disorder characterized by a combination of its common symptoms of dry eyes, dry mouth, and connective tissue disease, usually rheumatoid arthritis. (See Sjogren's Syndrome; Overview www.mayoclinic.org/diseases-conditions/sjogrens-syndrome/symptoms-causes/syc-20353216 (last visited January 23, 2023).

[4] Dr. Gwathmey was not present. Plaintiff was seen by resident Necrisha Roach, M.D. Dr. Gwathmey reviewed and verified Roach's findings. (R. 767).

She returned to Dr. Sherwood in January 2020. (R. 1015).  On that date she had normal range of motion in her neck, normal respiratory and cardiovascular findings, no joint tenderness, and normal psychiatric findings. (R. 1017).  She was directed to follow up in six to eight months. (R. 1018).  During an appointment with Dr. Syed the same month, Plaintiff reported tolerating her Methotrexate and starting the IVIg infusions. (R. 748).  She complained of fatigue and continuing pain in her legs and hands, and felt the need to sleep or lie down most of the time.  Id.  On exam, Dr. Syed found normal respiratory effort, no swelling, and mostly normal neurological findings. (R. 749).  Dr. Syed noted that her blood tests for Sjogren's were negative, and she had good pulmonary function tests. (R. 749-50).  A previously ordered PET scan showed no evidence of cardiac involvement with regard to her sarcoidosis. (R. 750).

In May 2020, Plaintiff consulted with Dana Alderson, a Nurse Practitioner in Dr. Syed's office.  She reported that her right leg pain had improved but she still experienced tenderness in her hands and feet. (R. 1079).  She was not checking her blood sugar and as a result, her diabetes was not under good control. (R. 1080).  At a meeting with her primary care physician, Dr. David K. Hoshino, later that month, Plaintiff reported that she was exhausted but "feels good." (R. 1113).  She was not following her diet due to COVID but reported she tried to walk.  Id.  She complained that her left leg "goes out."  Id.  Physical examination findings were essentially normal. (R. 1113-14).

In July 2020, Plaintiff returned to Dr. Gwathmey[5] reporting initial improvement with her IVIg infusions. (R. 1074).  However, she reported the two most recent doses did not show much improvement.  Id.  She still reported pain in her legs, arms and face, complaining that her legs

---

[5] Again, Dr. Gwathmey was not present, but later returned and verified the findings.  Plaintiff was seen by Mark Magharious, M.D. (R. 1078).

would "go out" while walking.  Id.  Her physical exam revealed some tenderness in her left knee but 5/5 strength in her upper and lower extremities, intact sensation, normal muscle bulk and tone, and a normal tandem gait and mental status exam. (R. 1076-77).  She was provided an orthopedic referral for her left knee pain. (R. 1078).

In July 2020, Plaintiff consulted with orthopedist Alberto Criado, M.D.  She noted that had not tried physical therapy or injections and was not taking any anti-inflammatories for her knee pain. (R. 1069).  Dr. Criado observed tenderness to palpation along her left knee, but she had a negative straight leg test, no joint effusion or joint line pain, 5/5 muscle strength, normal reflexes and motor function. (R. 1072).  X-rays taken revealed no degenerative arthritic changes, but an MRI showed a medial meniscal tear and a small cystic structure in her tibial plateau. (R. 950-51, 1072).  Dr. Criado ordered additional testing and provided crutches to assist in ambulating. (R. 1073).  He recommended weight loss and scheduled follow-up after her testing. (R. 1072-73).

When Plaintiff returned to Dr. Syed in August 2020, she reported doing well since her last visit with no sarcoid flares. (R. 955).  She had been told to lose 30 pounds before she could undergo surgery to repair the meniscal tear.  Id.  Her examination that day revealed normal cardiovascular findings, normal extremity and non-focal neurological findings. (R. 957-58).  Dr. Syed noted that Sjogren's Syndrome had been ruled out, Plaintiff's diabetes was improving, but still poorly controlled, and that the IVIg infusions had helped her neuropathic pain. (R. 959).  He counseled her to lose weight.  Id.

In September 2020, Plaintiff again consulted with Dr. Sherwood.  She continued to have left knee pain and discussed her reluctance to attend physical therapy due to COVID. (R. 1019).  Dr. Sherwood's exam found her in no distress, with normal respiratory, cardiovascular, musculoskeletal, and psychiatric findings, and no significant joint tenderness. (R. 1021).

7

In October 2020, Plaintiff again consulted with Nurse Practitioner Alderson. She reported that her symptoms were about the same after increasing Methotrexate and decreasing her Prednisone. (R. 1052). The monthly IVIg fusions helped control her pain, but it was not entirely gone. Id. Her exam findings were essentially unchanged, (R. 1054), and N.P. Alderson further reduced Plaintiff's Prednisone dose, referred Plaintiff to a weight loss clinic, and advised her to follow up with Dr. Gwathmey concerning the possibility of starting Remicade, (R. 1056).

When Plaintiff met with Dr. Syed in January 2021, she continued to complain of neuropathic pain on her left side. (R. 1039). She stated that her diabetes was under better control and she was monitoring her diet. Id. Dr. Syed found her neuropathy suboptimally controlled even with Gabapentin and IVIg. (R. 1043). Her exam again revealed normal pulmonary and cardiovascular findings, and no swelling. (R. 1041). Dr. Syed discussed the risks and benefits of initiating Remicade for her neuropathy and prescribed it. (R. 1043). Plaintiff also underwent another cardiac MRI in January 2021 which revealed normal left and right ventricles, normal systolic function and ejection fraction, and normal atria. (R. 1051, 1187).

In March 2021, Plaintiff met with Dr. Syed and was approved for Remicade with infusions to start in April or May. (R. 1347, 1351). Dr. Syed found improvement with Gabapentin, but that her neuropathy was not entirely controlled. (R. 1351). In June 2021, Plaintiff again consulted with Dr. Syed and reported improvement on Remicade, which she was tolerating without much difficulty. (R. 1184, 1188). He confirmed that updated images showed a significant decrease in spinal adenopathy, but Plaintiff's diabetes remained under poor control. (R. 1188). Her exam again revealed normal cardiovascular and pulmonary findings, no swelling in her extremities and joints, and normal neurological findings. (R. 1186). Dr. Syed spent significant time discussing weight loss strategies with a plan for Plaintiff to lose 20-25 pounds in six months. (R. 1189). Dr.

Syed observed that Plaintiff would continue on Remicade, Omeprazole, and IVIg infusions, but decrease her Prednisone and Methotrexate. (R. 1189).

**B.    Opinion Testimony**

      **1.    Aamer Syed, M.D.**

In August 2019, Dr. Syed wrote a letter confirming Plaintiff's use of immunosuppressive medications which made her susceptible to infections. (R. 595). He opined "its best that she avoids an environment that puts her at greater risk for infections even if these means that she not work at her current place of employment." Id. The following year, when Plaintiff was undergoing evaluation of her knee pain, Dr. Syed wrote a second letter "To Whom it May Concern," opining that neuropathy from her sarcoidosis, and ongoing musculoskeletal problems presented a significant symptom burden. (R. 996). He wrote "I do not think at this point it is possible for her to maintain a meaningful job." Id.

On March 17, 2021, Dr. Syed completed a medical source statement. (R. 1134-36). The statement was a check-the-box form asking for opinions based upon the Plaintiff's medical condition. Id. On the form, Dr. Syed described her diagnoses as "neuropathy, dyspnea, arthralgias" which he attributed to multi-system sarcoidosis with diffuse inflammation. (R. 1134). Dr. Syed checked certain boxes indicating that Plaintiff's pain would interfere with her work "frequently" but he was unable to quantify the amount. (R. 1134). With respect to her physical capacities, Dr. Syed declined to check boxes corresponding with the Claimant's ability to sit and stand/walk, instead referring to his narrative comment. (R. 1135). He did, however, check the box indicating Plaintiff was unable to work. (R. 1135). In his narrative comment, Dr. Syed reiterated his opinion that Plaintiff had significant neuropathy and immune suppression resulting

from her medications. (R. 1136). He wrote that "her symptom burden remains high and hence her ability to perform meaningful work is limited for now. Id.

### 2.      State Agency Physicians

During her initial agency evaluation in December 2019, Jack Hutcheson, M.D. reviewed the medical record and opined that Plaintiff could perform light work. (R. 125, 135). He found she could lift and carry 20 pounds occasionally and 10 pounds frequently, and stand, walk, and sit for six hours in an eight-hour workday. (R. 122-23, 132-33). He found that Plaintiff had few postural limitations, but did impose environmental restrictions, including avoiding concentrated exposure to humidity, fumes, dust, and poor ventilation due to her asthma and sarcoidosis. (R. 123-24, 133-34).

On reconsideration in May 2020, Richard Surrusco, M.D., essentially echoed Dr. Hutcheson's findings but concluded Plaintiff would be restricted to sedentary work. (R. 151-54, 166-69). He found she could occasionally lift and carry 10 pounds and frequently lift and carry 10 pounds. (R. 151, 166). He also found she could sit up to 6 hours and stand/walk up to 2 hours in each 8-hour workday. Id. She could occasionally stoop, kneel, crouch, crawl, or climb ramps or stairs, ladders, ropes or scaffolds. (R. 151-52, 166-67). He attributed the postural and exertional limitations to small fiber neuropathy, obesity, and sarcoidosis, but noted that Plaintiff's exams revealed no joint swelling, intact and steady coordination, and a "non-ataxic gait with good arm swing." Id.

### C.      Testimony Before the ALJ

On July 7, 2021, Plaintiff's attorney questioned Plaintiff during the administrative hearing. (R. 42-58). The ALJ also heard testimony from the VE, Herman Bates. (R. 58-62).

1.      **Plaintiff's Testimony**

On direct questioning by her attorney, Plaintiff testified that she was born in December 1998, and was 32 years old on the date of the hearing. (R. 48-49). She completed high school in 2007, receiving a "modified diploma" as a result of an auditory processing disorder that required accommodations during school. (R. 49-51). She received extra time on tests and other accommodations, and failed to pass the SOLs in her junior and senior year. (R. 50). In 2010, she also completed a degree at Eastern Shore Community College with the same type of assistance. (R. 50-51).

She reported working after finishing school until 2019 when she left her position as a teaching assistant due to symptoms related to sarcoidosis. (R. 51-52). She testified that she could no longer pick up children, and that her doctors told her standing all day would aggravate her neuropathy. Id. She described lying down most of the day, four to six hours, as a result of aches and sleepiness brought on by her condition and medications. (R. 52-53, 55-56). In addition, she reported migraine headache, as well as pain and burning in her legs. (R. 53). She did not believe she could lift any weight apart from small household utensils. (R. 55). With regard to her daily activities, she stated that she mainly watched TV, reclining and resting. (R. 56). Although she has a driver's license, she stated that she stopped driving in 2019 after her diagnosis. (R. 49). With respect to her auditory processing disorder, Plaintiff described needing assistance to understand instructions and stated that she worked with a job coach who helped facilitate her prior employment. (R. 56-57).

2.      **Testimony from the VE**

The ALJ also examined the VE. (R. 58-61). In response to a hypothetical posed by the ALJ, the VE testified regarding work available to a person with Plaintiff's prior experience who

was capable of sedentary work with detailed postural and exertional limitations. Specifically, the

ALJ posited an individual:

> limited to simple, routine, repetitive tasks with no more than a minimal—but no
> more than occasional change in a routine, and work that allows the individual to
> avoid fast paced tasks, such as assembly line jobs of all production quotas. The
> individual is limited to occasional interaction with the public and co-workers. Is
> limited to frequent fingering, grasping, handling, and reaching. Has to avoid work
> around hazards such as moving, dangerous machinery, and unprotected heights.
> Avoid concentrated exposure to respiratory irritants, and extreme temperatures, and
> humidity. And work environments would need to have close proximity to an
> accessible restroom, such as in an office setting on the same floor.

(R. 59).

The VE testified such limitations would preclude Plaintiff's past relevant work as a

teacher's aide, housekeeping cleaner, and poultry eviscerator. (R. 58-60). He also testified there

were other jobs in the national economy which Plaintiff could perform, including document

preparer (DOT 249.587-018) with 18,000 jobs nationally, press clipping cutter and paster (DOT

249.587-014) with 6,500 jobs nationally, and ticket checker (DOT 219.587-010) with 7,500 jobs

nationally. (R. 60). The ALJ then asked whether use of a job coach would be consistent with

competitive employment and the VE testified that it would not. (R. 61). In response to further

questions by Plaintiff's counsel, the VE stated that if the same hypothetical individual required

more than two absences per month or was off task more than 15 percent of the workday, those

additional limitations would preclude all work. (R. 62).

### III.   STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to

determining whether the decision was supported by substantial evidence on the record and whether

the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v.

Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but the evidence may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390; see also Lewis v. Berryhill, 858 F.3d 858, 868 (4th Cir. 2017). Ultimately, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.   ANALYSIS

In her motion for summary judgment, Plaintiff primarily presents one challenge to the Commissioner's final decision. She argues the ALJ improperly analyzed the opinion evidence from Dr. Syed in the medical source statement he completed in March 2021. Specifically, she claims the ALJ's opinion failed to adequately explain the consistency and supportability factors the SSA's rules required be examined, and his finding that the opinion was "not persuasive." Relatedly, she argues that after discounting all the opinion evidence of record, the ALJ failed to develop the record leaving the RFC unsupported by substantial evidence. As set forth below, after

review, I find the ALJ complied with the rules and his explanation and citation to the medical record are sufficient to satisfy the substantial evidence test. Accordingly, this Report recommends the court affirm the Commissioner's final decision.

**A.      Framework for Social Security Act Disability Evaluation**

A person may file for and receive disability insurance benefits under the Social Security Act if he or she meets the insured status requirements of 42 U.S.C. § 423(c)(1), is under the retirement age as defined in § 416 of the Act, and is under a disability as defined in § 423(d). As relevant here, the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); accord 20 C.F.R. § 404.1505(a). An impairment renders an individual disabled only if it is so severe as to prevent the person from engaging in his or her prior work or any other substantial gainful activity that exists in the national economy. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

Social Security Administration regulations set out a sequential analysis which ALJs use to make their determination. 20 C.F.R. § 404.1520(a)(4). Specifically, the regulations direct the ALJ to answer the following five questions:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or a combination of impairments that meets the durational requirement and significantly limits his or her physical or mental ability to do basic work activities?

3. Does the individual suffer from an impairment(s) that meets or equals a listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (a "listed impairment") and meets the durational requirement?

4. Does the individual's impairment or combination of impairments prevent him or her from performing any relevant past work?

5.      Does the individual's impairment or combination of impairments prevent him or her from performing any other work?

An affirmative answer to question one, or a negative answer to questions two, four, or five, means the claimant is not disabled. An affirmative answer to questions three or five establishes disability. The claimant bears the burden of proof during the first four steps; if the analysis reaches step five, the burden shifts to the Commissioner to show that other work suitable to the claimant is available in the national economy. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Jolly v. Berryhill, No. 16-cv-38, 2017 WL 3262186, at *6 (E.D. Va. July 13, 2017).

The Social Security Administration considers all material evidence in evaluating whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(3); 404.1520b. This includes "(1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age." Jolly, 2017 WL 3262186, at *6 (citing Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967)). Ultimate responsibility for making factual findings and weighing the evidence rests with the ALJ. Hays, 907 F.2d at 1456 (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)).

**B.      The ALJ Decision Currently Before the Court for Review.**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged disability onset date on August 24, 2019, until the date of the hearing. (R. 22). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: neuropathy, obesity, sarcoidosis, Sjogren's Syndrome,[6] diabetes, asthma, left knee disorder, and neuro

---

[6] The ALJ's opinion recognized that blood tests for Sjogren's were negative. (R. 23). He nonetheless included it as an impairment because the medical record revealed symptoms of the disease, including dry mouth and dry eyes, and her primary care physician referred to a Sjogren's diagnosis. Id.

developmental disorder. (R. 23).   At step three, the ALJ found that Plaintiff did not suffer from a listed impairment or combinations of impairments that met or medically equaled the severity of one of the listed impairments.  Id.  The ALJ then developed a finding regarding Plaintiff's RFC. He determined Plaintiff was able to perform sedentary work as defined in 20 C.F.R. §§ 404.1567a and 416.967a with the following additional limits:

> [T]he claimant is limited to walking no longer than one block at a time.  The claimant can stand no longer than 15 minutes at a time and sit no longer than 30 minutes before standing for a few minutes.  The claimant has to avoid crawling and climbing ladders, ropes, and scaffolds, but she can perform other postural movements occasionally. The claimant is limited to simple, routine, repetitive tasks with no more than occasional change in the routine and work that allows her to avoid fast-paced tasks, such as assembly line jobs involving production quotas.  The claimant is limited to occasional interaction with the public and co-workers.  The claimant is limited to frequent fingering, grasping, handling, and reaching.  The claimant has to avoid working around hazards such as moving dangerous machinery and unprotected heights.  The claimant has to avoid concentrated exposure to respiratory irritants and extreme temperatures and humidity.  The claimant's work environment needs to have close proximity to an accessible restroom, such as in an office setting on the same floor.

(R. 26). At step four, the ALJ concluded that Plaintiff could not perform any of her past relevant work. (R. 32).  At step five, the ALJ found there were other jobs in the national economy Plaintiff could perform, including document preparer, with 18,000 jobs nationally.  (R. 32-33).  The ALJ thus found that Plaintiff was not disabled from her onset date of August 24, 2019 through the date of the decision on August 11, 2021.  (R. 33-34).

## C.   The ALJ's RFC Finding and Assessment of Dr. Syed's Opinion is Supported by Substantial Evidence.

Plaintiff's primary argument in this court asserts that the ALJ erred in determining her RFC because he failed to give proper weight to an opinion from Dr. Syed, one of Plaintiff's primary

care providers.[7] Pl.'s Mem. (ECF No. 14, at 9). She insists that the ALJ improperly considered and applied the factors of consistency and supportability to Dr. Syed's opinion. Pl.'s Mem. (ECF No. 14, at 9-15). Defendant argues that the ALJ correctly analyzed the opinions, and that Plaintiff's arguments about supportability and consistency misapprehend the ALJ's obligations to explain his decision, and ignore the substantial evidence he cited in support of it. Def.'s Opp'n (ECF No. 17, at 19-25).

Here, the ALJ found the opinion from Dr. Syed "not persuasive" because it was inconsistent with objective findings in the medical record, and not supported by the doctor's contemporaneous record. (R. 31). This evaluation complied with the relevant rules and the resulting RFC finding is supported by substantial evidence.

### 1. The ALJ's evaluation of Dr. Syed's opinion complied with the relevant rules, and his RFC finding is supported by substantial evidence.

In determining whether the claimant has a medically determinable severe impairment, or combination of impairments, that would significantly limit the claimant's ability to work, the ALJ must analyze the claimant's medical records and any medical evidence resulting from consultative examinations or medical expert evaluations. 20 C.F.R. §§ 404.1512, 404.1527. If the medical opinions are inconsistent with each other or other evidence, the ALJ must evaluate the opinions and determine which are more persuasive. 20 C.F.R. § 404.1520c(a).

Under the rules, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." Id. Instead, the ALJ considers the overall "persuasiveness" of each opinion. Id. And while the ALJ

---

[7] On January 18, 2017, the SSA adopted new rules for considering medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c. The new rules apply to all claims filed after March 27, 2017. Id. Because Plaintiff filed her claims on September 5, 2019, (R. 117-18, 127-28), the new rules apply.

may consider many factors in evaluating persuasiveness, he or she must explain only "the most important factors" of "supportability and consistency," § 404.1520c(b)(2). As set forth below, I conclude the ALJ analyzed both supportability and consistency, and his RFC finding is supported by substantial evidence.

> a.   **The ALJ's analysis of the supportability factor is supported by substantial evidence.**

Supportability assesses whether the medical source supported the opinion with "objective medical evidence and supporting explanations," which increases the opinion's persuasiveness. 20 C.F.R. § 404.1520c(c)(1). Supportability requires at least some "objective medical evidence and supporting explanations," id., and providers can generally be expected to note abnormalities in their treatment records. See, Hyacinth L. v. Commissioner, No. 2:20cv641, 2022 WL 4483823, at *5 (E.D. Va. Sept. 27, 2022) (sustaining ALJ's assessment of medical opinion where provider "fail[ed] to point to specific findings to warrant additional limitations in light of other objective medical evidence"); cf. Riffe v. Saul, No. 1:20-cv-00448, 2021 WL 5138180, at *11 (S.D. W. Va. June 7, 2021) (reciting ALJ's expectation that treating providers would "note those abnormalities on mental status evaluations"). Dr. Syed's March 2021 opinion was unable to quantify certain limitations. (R. 1134-36). And because the opinion is primarily presented in a check-box fashion, the specific limitations he did assess are not attributed to any objective medical record. Id. He did not explain why Plaintiff's conditions produced the limitations expressed or cite corresponding notations in his treatment records to support the disability limitations described in the form. Plaintiff fails to address this shortcoming, see generally Pl.'s Mem. (ECF No. 14, at 9-15), and it was reasonable for the ALJ to find Dr. Syed's opinions unpersuasive without this evidence.

With regard to the opinions that were expressed, the ALJ carefully analyzed each one. The ALJ first observed that several statements merely offered Dr. Syed's belief that his patient was

disabled. (R. 31) treatment notes at (citing R. 751 in which Dr. Syed writes, "I think she would be a good candidate for starting the disability process."). He correctly noted that such opinions relate to an issue reserved to the Commissioner and are not entitled to any weight. Marion R. v. Comm'r, No. 2:21cv259, 2022 WL 4363128, at *14 (E.D. Va. April 5, 2022) (citing 20 C.F.R. § 416.927(d)). R. & R. adopted by 2022 WL 4358080 (E.D. Va. Sep. 20, 2022). Indeed, Plaintiff does not contest this assessment.

With regard to Dr. Syed's other opinions in the medical source statement, the ALJ found that Dr. Syed's treatment notes did not support his opinions, including his suggestion that Plaintiff would need extra breaks and bed rest during work for pain relief. Id. He observed that Dr. Syed's medical notes did not describe Plaintiff as bedridden, but generally noted normal motor strength and an intact gait. Id. He noted Plaintiff's neuropathic pain, but stated that she had no depression or other mental health symptoms related to her pain, and generally presents as alert, oriented, and cooperative. Id. Elsewhere in his analysis the ALJ cited medical records from Dr. Syed establishing that Plaintiff regularly had normal neurological and pulmonary findings, no joint swelling, normal cardiovascular findings, and only mild swelling in her lower extremities. (R. 28-30) (citing R. 602-03, 748, 1041, 1188). Although her sarcoidosis was not completely in control, Plaintiff tolerated her medications well and they appeared to improve her neuropathic pain and other symptoms. (R. 28) (citing R. 600, 603). These facts, all of which were specifically identified in the ALJ's opinion, are sufficient to sustain his analysis of the supportability factor.

Plaintiff identifies facts that would support an alternative finding, including the notes on Dr. Syed's medical source statement that Plaintiff's PET scan imaging revealed signs of inflammation, and that her sarcoidosis resulted in "significant neuropathy." Pl.'s Mem. (ECF No.

14, at 12) (citing R. 1134-36).  But her conclusion that the ALJ ignored this evidence, or made

"vague and conclusory" justifications for the assessment is not supported by the record.  Id., at 13.

The ALJ's opinion must be viewed as a whole, and as the foregoing citations establish, there was

ample evidence cited in his opinion to sustain his reasoning on supportability.  The court must

defer to the ALJ's findings if supported by substantial evidence.  Perales, 402 U.S. at 390; see also

Lewis, 858 F.3d at 865.  This appeal is not an opportunity to relitigate the case.  If "conflicting

evidence allows reasonable minds to differ as to whether [Plaintiff] is disabled," then the court

defers to the ALJ.   Craig, 76 F.3d at 589 (quoting Walker v. Bowen, 834 F.2d at 635, 640 (7th

Cir. 1987)).

### b.   The ALJ's evaluation of the consistency factor is supported by substantial evidence.

Consistency assesses whether the medical source's opinion is "consistent . . . with the

evidence from other medical and nonmedical sources."   20 C.F.R. § 404.1520c(c)(2).   In

considering the consistency of the medical source statements, the ALJ specifically relied on the

agency consultants, finding that Dr. Surrusco's opinion limiting Plaintiff to sedentary work was

"more consistent" with symptoms which could result from Plaintiff's impairments.  (R. 31).  He

also added limitations to account for Plaintiff's ongoing reports of neuropathic pain.  Id.  As

discussed below, the ALJ rested his opinion on numerous relevant inconsistencies between Dr.

Syed's opinions and Plaintiff's overall medical treatment, each of which are supported in the

record.

As noted by the ALJ throughout his opinion, the medical evidence of Plaintiff's limitations

was frequently at odds with Dr. Syed's opinion statement.  In 2019, for example, Plaintiff regularly

reported severe neuropathic pain, but her physical exam by Dr. Gwathmey revealed no swelling,

normal muscle bulk and tone in all her extremities, 5/5 muscle strength, and mostly intact

sensation. (R. 28) (citing 765). Similarly, in January 2020, Plaintiff consulted with Dr. Sherwood who noted her confirmed sarcoidosis diagnosis, but recorded normal pulmonary and cardiovascular findings, as well as no evidence of peripheral synovitis, and no joint swelling. (R. 29) (citing R. 1017). At a follow-up visit in September 2020, Dr. Sherwood's findings were essentially the same. (R. 29) (citing R. 1021). Plaintiff's primary care provider, Dr. Hoshino, consistently reported normal physical findings, and advised his patient to exercise up to 45 minutes five times per week within her capacity. (R. 29) (citing R. 1089, 1102).

The ALJ noted all of these recorded observations by other medical providers in his RFC analysis. While he did not repeatedly note that they were inconsistent with Dr. Syed's severe limitations, the analysis he did provide is sufficiently developed to permit meaningful judicial review, Todd A. v. Kijakazi, No. 3:20cv594, 2021 WL 5348668, at *4 (E.D. Va. November 16, 2021), and to satisfy his duty to explain the inconsistencies which led him to find the Dr. Syed statement "not persuasive." (R. 31).

      c.    **The ALJ built an adequate bridge between the evidence and his conclusion.**

Plaintiff also argues that the ALJ failed to build an accurate and logical bridge from the evidence to her conclusion. Pl.'s Mem. (ECF No. 14, at 13-15). ALJs are required to clearly and logically explain how the evidence supports their rulings. Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016). Here, the ALJ identified relevant evidence and connected it to the RFC determination. See (R. 26-32). As set forth above, the ALJ pointed to numerous entries in Plaintiff's medical records justifying his decision to set Plaintiff's exertional limits as sedentary, and he imposed the postural and non-exertional limits set out in the RFC. (R. 28-31). In fact, the only limitation not adopted by the ALJ and accommodated by Plaintiff's RFC is Dr. Syed's opinion that Plaintiff would require extra breaks and bedrest during the day for pain relief. But,

as set forth above, the ALJ relied on other medical evidence, including opinion evidence from Dr. Surrusco that demonstrated Plaintiff could perform sedentary work within her RFC. (R. 31). This explanation was sufficient to satisfy the ALJ's duty to build a bridge between the evidence and his conclusion.

### d.    The record was adequately developed to support the ALJ's RFC.

Plaintiff also argues that the ALJ failed to properly develop the record because he rejected all the opinion evidence, and modified Dr. Surrusco's sedentary exertion opinion by adding restrictions. Pl.'s Mem. (ECF No. 14, at 16). An ALJ "has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record," even when the plaintiff's "evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986) (citations omitted). "The key consideration is whether the record contained sufficient medical evidence for the ALJ to make an informed decision regarding the claimant's impairment." Lehman v. Astrue, 931 F. Supp. 2d 682, 692-93 (D. Md. 2013) (quoting Craft v. Apfel, 164 F.3d 624, 1998 WL 702296, at *3 (4th Cir. Oct. 6, 1998) (unpublished table opinion)) (cleaned up). However, the "ALJ is under no obligation to supplement an adequate record to correct deficiencies in a plaintiff's case." Id. at 693 (citing Rice v. Chater, 53 F.3d 329, 1995 WL 253134, at *2 (4th Cir. May 1, 1995) (unpublished table opinion)). Plaintiff argues that the medical evidence left an "evidentiary gap" because the ALJ discredited all the medical opinion evidence to varying degrees, and therefore the ALJ should have ordered additional examinations. Pl.'s Mem. (ECF No. 14, at 17). In this case, there was substantial record evidence supporting the conclusion that Plaintiff was not disabled during the timeframe alleged.

Plaintiff's primary argument rests on an incorrect assertion that the ALJ improperly discredited all the medical opinion evidence. However, any "argument that the ALJ's finding is

not supported by substantial evidence because the ALJ is a layman and did not obtain an expert medical opinion . . . is without merit." Id. at 230.

The ALJ also did not err by not seeking out additional medical opinions. The ALJ has a duty to "explore all relevant facts and inquire into the issues necessary for adequate development of the record. Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). But he "is not required to function as the claimant's substitute counsel . . . ." Bell v. Chater, 57 F.3d 1065, 1995 WL 347142, at *4 (4th Cir. June 9, 1995) (unpublished table opinion) (quoting Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994)); see also Loving v. Astrue, No. 3:11cv411, 2012 WL 4329283, at *5 (E.D. Va. Sept. 20, 2012). Plaintiff was represented by counsel during the hearing, (R. 43), and the same firm continues to represent Plaintiff now, see Pl.'s Mem. (ECF No. 14, at 19). Further, after the hearing, the ALJ accorded Plaintiff 20 days to submit additional medical records from VCU. (R. 62). Extensive additional materials were submitted, but as the ALJ noted, they largely duplicated those in the record. (R. 29, 1140-1526). Thus, the ALJ's narrow duty to develop the record was not triggered here.

## V.      RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court GRANT the Commissioner's Motion for Summary Judgment, (ECF No. 16), DENY Plaintiff's Motion for Summary Judgment, (ECF No. 13), and AFFIRM the Commissioner's finding of no disability.

## VI.      REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.      Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C.

§ 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.     A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

February 16, 2023